By the Court:

Freedman, J.
The contract of October 27, 1856, made between Dennis and White, did not bind Carmi Hart to put his one-quarter interest into the company proposed to be organized under said contract with a capital of two hundred thousand dollars ($200,000), nor did it of itself confer any rights upon Carmi Hart. The clause at the end of said contract to the effect that such undivided interest in Hart’s patent as is not owned by the contracting parties shall be brought into the capital stock of said company, and shall be paid for in stock in such proportions as shall be just and equitable, laid White, however, as well as Dennis, under the obligation, in case of the formation of the company referred to, to procure that interest, and to incur the expenses (in stock) necessary to secure it. But, as all efforts to organize a company under this contract failed, and were abandoned as impracticable, the rights of the plaintiff in this action mainly depend upon the true construction of the agreement of November twenty-fifth, 1856. This agreement is executed by Dennis only, and contains promises and covenants on the part of Dennis only, but does not state any on the part of Carmi Hart. Dennis thereby covenanted that in case the arrangement between *17 himself and "White for forming a stock company, with a capital of two hundred thousand dollars ($200,000), should not be completed and successfully earned out, he would proceed with the construction and completion of a large machine for cutting veneers, according to the plan described in Carmi Hart’s letters patent, and would put the same into operation; that he would appropriate and expend ten thousand dollars ($10,000) if necessary for such object; and that after such machine had been made and completed, the same should be used and applied to the promotion of the formation of another stock company, the capital of which is not specified, in which his (Dennis) interest in the letters patent should be incorporated as a part of the capital stock; and he therein further agreed, among other things, “ that whatever stock in the said company, now or hereafter to be formed, shall be represented by the quarter of the letters patent still remaining the property of said Hart, shall be given and transferred to said Hart, or his assigns, free of all assessment, charge, or expense, either to said Hart or to the stock so represented; it being the intention of the said Dennis that the interest of the said Hart, which shall go mto the said company, when formed, shall be held and owned by him, said Hart, and his assigns, free, clear, and unassessable for any charge or expense whatsoever, arising out of the formation and organization of the said company,, or the incorporation thereof, etc.”
It will be seen that Dennis thus bound himself to put his interest in the patent into the company, to be organized, under all circumstances, but that Hart was under no obligation to put in his one-quarter interest unless he so elected. It will also be observed that the agreement did not in terms obligate, or purport to obligate, Dennis to secure the organization of a company with a stipulation, or to contract with the company to the effect that Carmi Hart should have the privilege at all times, and under all circumstances, of transferring his interest to the company after it had been formed. In these respects the last-named agreement materially differs from the contract between Dennis and White. The memorandum at the foot of the agreement of November *18 twenty-fifth, 1856, signed by Staples (but not signed by Dennis or White), if binding upon Dennis at all, affects no other question but the question of the quantity of the stock to which Hart might become entitled. It can exercise no influence upon the determination of the question in what contingency or upon what condition Dennis did covenant that the stock should be issued to Hart, and it seems as if this memorandum, at the time it was made, had, in the minds of the parties which could be affected by it, special reference to the agreement of October twenty-seventh, 1856. But although this may have been otherwise, it cannot be doubted that Dennis, in the agreement of November 25, 1856, undertook to construct and build a large machine according to the plan described in said letters patent, and to put the same into operation, and to appropriate and expend, if necessary, ten thousand dollars ($10,000) for that object before the attempt was to be made to form the stock company. A fulfilment of these stipulations before the actual formation of the company was necessary, therefore, to the due performance of the contract on the part of Dennis. Upon this point the language of the agreement is too clear to admit of dispute.
When, therefore, all efforts to organize a company with a capital of two hundred thousand dollars ($200,000), under the agreement of October 27, 1856, had been abandoned; when Carmi Hart was informed of the steps which had been taken to form a company with a capital of one hundred thousand dollars ($100,000), which was to have as capital, exclusive of money ■capital, precisely the same property as contemplated by the •agreement between Dennis and White; when he was told that If he did not put his one fourth of the patent into the company, the other parties would be obliged to form a company on the 'basis of three fourths of the patent, but if he would put in his -one fourth or consent to do so, he should receive one fourth of the stock, he was not bound to assent to the formation of that company, but on the contrary had a clear right to refuse' to come in, for the reason ■ that Dennis and his executors had wholly failed to perform those conditions of the agreement, *19 which were to precede the formation of the company, and upon the performance of which the success of any company, which might or could be formed, depended to a great extent.
On the other hand the agreement of November 25, 1856, as’ before said, did not, in express terms, impose an obligation upon Dennis to secure the organization of a company in such a manner and with such stipulations as to reserve to Oarmi Hart the unlimited privilege of coming in with his one-quarter interest at any time he might thereafter elect; and I am of the opinion that, after full performance on the part of Dennis of all the aforesaid conditions precedent, and an express refusal on the part of Oarmi Hart to transfer his one-quarter interest in the letters patent to a stock company subsequently organized in strict conformity with the provisions of the agreement of November 25, 1856, a company could have been formed on the basis of the ownership of an undivided three-quarters interest in the patent. In such case Oarmi Hart might well be held estopped upon general principles from subsequently insisting upon the delivery of any portion of the stock and from otherwise asserting the rights, which, but for his approval, he would have had.
But inasmuch as the undisputed facts of the case under consideration show that the company formed upon the one hundred thousand dollar ($100,000) plan was organized without the previous construction by the estate of Dennis of a large machine, according to the plan described in Hart’s patent; that no machine was ever constructed by the estate of Dennis at the expense of the estate; that a large machine which has been constructed was not constructed strictly on Oarmi Hart’s plan or invention, but was built by the company, under the superintendence of a person incompetent for that purpose; that a machine properly constructed on Hart’s plan would have done good work, and that the failure of the company was attributable in a great degree to the insufficiency of that machine; Oarmi Hart cannot be deemed to have forfeited his rights against the estate of Dennis by a refusal to join a stock company which was not organized in such *20 a manner, and with such a guarantee of success as he had stipulated for.
It is true, the company was, in point of fact, organized on the basis of the ownership of an undivided three-quarters interest in the patent only; all of its stock was issued for property to be used in its business. It was, therefore, a physical impossibility, after the company had once been thus organized and had thus parted with its stock, to give to the one-quarter interest of Hart a subsequent representation by stock in such company; no stock remained for any such purpose, and Carmi Hart, in consequence of his persistent refusals to join, may be fairly held estopped from subsequently claiming part of such stock. But this estoppel does not extend any further, and does not prevent the plaintiff, as the representative of the interest of Carmi Hart, from asserting his rights against the estate of Dennis. As the offer of Carmi Hart to waive all damages for the breach of the conditions precedent to the formation of the company, contained in the agreement of November twenty-fifth, 1856, and to accept stock of a company not organized as it should have been, was not accepted—and the fact that it was impossible to accept it does not change the matter—the plaintiff is at liberty to insist upon full payment of all damages sustained in consequence of the breaches on the part of Dennis, and his executors, of the covenants contained in said agreement. It seems perfectly clear to me that the plaintiff has an undisputable right to the recovery of these damages; but they can in no event exceed, as the evidence stands, the market value of the stock at the time of the demand. The referee, therefore, erred in computing the damages sustained by the plaintiff by taking the value of said stock and of the patent at the time of the organization of the company.
The judgment should be reversed.
Monell, J., concurred.